Pfeifer, J.,
concurring.
{¶ 64} I concur in the judgment granting relators’ request for a writ of mandamus, but write separately to suggest ballot language that would “ ‘assure a free, intelligent and informed vote by the average citizen affected.’ ” State ex rel. Bailey v. Celebrezze, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981), quoting Markus v. Trumbull Cty. Bd. of Elections, 22 Ohio St.2d 197, 259 N.E.2d 501 *273 (1970), paragraph four of the syllabus. Given the proximity of the applicable deadlines for boards of elections to have absentee ballots printed and ready to use, it is appropriate for this court to provide specific guidance to the ballot board regarding ballot language.
The Ballot Board Language
Paragraph One
{¶ 65} Paragraph one of the board’s language uses terminology — “elected representatives” and “appointed officials” that, while perhaps not inherently false, strays toward editorial commentary. In adopting that language, the ballot board appears to place its thumb on the scales in favor of one side of the issue. Specifically identifying the institutions currently entrusted with federal congressional redistricting and state legislative reapportionment would better inform voters of the substance of the change of the proposed amendment. Including the name of the commission that would be adopted if the voters approve the measure would also enhance voters’ understanding of the proposal.
Paragraph Two
{¶ 66} In regard to paragraph two of the ballot language, I disagree with the majority that the particulars of the selection process need to be included. Adding the complex, multilayered details of the commission-member selection process, including a reference to the duties of the chief justice and the court of appeals judges, would not significantly add to voters’ knowledge of the proposal. The commission’s second paragraph sufficiently explains the key point — the end product of the selection process is a commission that is effectively politically neutral, composed of four Republicans, four Democrats, and four independents. Judicial involvement in the selection process is not material to understanding the central import of the amendment.
Paragraph Four
{¶ 67} I agree with the majority that the ballot board’s approved language in paragraph four completely fails to inform the average voter of the preeminent part of the amendment — the criteria required for the commission to draw district lines. This is the guts of the proposal and adds significant new requirements to the drawing of district lines.
Paragraph Five
{¶ 68} I concur in the majority’s conclusion regarding paragraph five that by not including the qualifying language for commission funding, the ballot board’s language is inaccurate and misleading. New language should include the limita *274 tions specified in the actual text of the amendment — “appropriations necessary to adequately fund the activities of the Commission.”
New Ballot Language
{¶ 69} By expressly suggesting to the ballot board appropriate language that could be adopted, we would prevent any further delays concerning this matter that might prejudicially affect the right to intelligently vote on this important issue. In my view, the following language would properly summarize the substance of the relators’ proposed amendment:
Issue 2
[TITLE HERE]
Proposed Constitutional Amendment Proposed by Initiative Petition
To add and repeal language in Sections 1, 3, 4, 6, 7, 9, and 13 of Article XI, repeal Sections 8 and 14 of Article XI, and add a new Section 16 to Article XI of the Constitution of the State of Ohio
A majority yes vote is necessary for the amendment to pass.
The proposed amendment would:
1. Remove the authority of the General Assembly in federal congressional redistricting and the authority of the Ohio Apportionment Board in state legislative reapportionment and grant new authority to draw the boundaries of congressional and state legislative district lines to an appointed commission to be known as the Ohio Citizens Independent Redistricting Commission.
2. Create a state-funded commission of appointed officials from a limited pool of applicants to replace the aforementioned. The commission will consist of 12 members as follows: four affiliated with the largest political party, four affiliated with the second largest political party, and four not affiliated with either of the two largest political parties. Affirmative votes of 7 of 12 members are needed to select a plan.
3. Require that new legislative and congressional districts be immediately established by the commission to replace the most recent districts adopted by elected representatives, which districts shall not be challenged except by court order until the next federal decennial census and apportionment. In the event the commission is not able to determine a plan by October 1, the Ohio Supreme Court would adopt a plan from all the plans submitted to the commission.
*275 4. Change the standards and requirements in the Constitution for drawing state legislative and federal congressional districts by requiring that no plan shall be drawn or adopted with intent to favor or disfavor a political party, incumbent, or potential candidate and requiring that the commission adopt the redistricting plan that most closely meets the factors of community preservation (minimizing the number of governmental units that must be divided between different districts), competitiveness (maximizing the number of politically balanced districts), representational fairness (balancing the number of districts leaning toward each political party so that the number of districts leaning toward each party closely corresponds to the preferences of the voters of Ohio), and compactness (creating districts that are compact). No plan shall be adopted that does not comply with all applicable state and federal constitutional provisions and all applicable federal statutory provisions and the requirement that each district shall be composed of contiguous territory.
5. Mandate the General Assembly to make appropriations necessary to adequately fund the activities of the commission.
If approved, the amendment will be effective 30 days after the election.
YES
NO
SHALL THE AMENDMENT BE APPROVED?